## Brown, Bell & Cowgill v. Garrett, et al.

(Decided June 22, 1928.)

### Appeal from Clark Circuit Court.

Fraudulent Conveyances.—Under Bulk Sales Law (Ky. Stats., 1922, secs. 2651a1-2651a7), requiring that suit against purchaser at invalid sale be brought within four months after "consummation thereof," sale is "consummated" by the notorious act of the buyer in taking possession, and when the title passes, rather than at time when buyer completes contract by making payment; "consummate" meaning to bring to completion, finish, perfect, achieve, to come to fulfillment or perfection.

MARCUS C. REDWINE for appellants.

RODNEY HAGGARD for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to December 28, 1925, the appellee and one of the defendants below, C. B. Garrett, was a country merchant operating a small establishment in the village of Wades Mill, in Clark county. Besides the stock of merchandise, he owned a small lot containing some five or six acres, with a residence on it, and upon which was also located his business house. Some time in the summer of that year he began negotiations with the other appellant and defendant below, W. F. Barrett, which culminated in the latter agreeing to purchase from Garrett all of his property, including the stock of merchandise, the latter of which invoiced slightly more than $825. The invoice of the stock, according to the prepon-

derance of the testimony and which the court found to be correct, was completed on December 28, 1925, at which time Barrett took possession, but he deferred paying the cash consideration for both the stock and real estate until January 4, 1926, when he delivered his check to Garrett for the agreed amount of $5,466.88. There is some slight contradiction as to when the invoice was completed and the time when Barrett took charge, but the court found the facts as we have stated, which is supported by a preponderance of the testimony, and which for the purposes of this case it will be so accepted.

On April 30, 1926, the corporate appellant and plaintiff below, Brown, Bell & Cowgill, a wholesale concern located in Winchester, Ky., filed this action in the Clark circuit court against both seller and purchaser, to have the sale, so far as applicable to the stock of merchandise, operate as a general assignment for the benefit of creditors, upon the ground that the sale of the stock was one in bulk, and that there had been no compliance with chapter 85a of our present Statutes, commonly known as the "Sales in Bulk" statute, and which is now section 2651a-1 to and including section 2651a-7 of our 1922 edition of Kentucky Statutes. But the only sections here involved are the first three. It was alleged in the petition that Garrett was indebted to plaintiff in the sum of $500, which was contracted before the sale, and that none of the provisions of any of the sections referred to were followed.

The answer of defendants contained a denial of the material averments of the petition, and another paragraph pleaded the limitation of four months contained in the proviso at the end of section 2651a-3, saying:

"Provided, further, that no proceeding at law or equity shall be brought against the purchaser to invalidate any such sale after the expiration of four months from the consummation thereof."

It was also alleged in the answer that the attacked sale was *consummated* on December 28, 1925, when the invoice of the stock was completed and Barrett was put in possession thereof. That contention was disputed by plaintiff by its claiming, first, that the invoice was not completed until after the first of the year 1926; and, second, that the sale was not consummated within the contemplation of the statute until the delivery of the check in

payment of the consideration on January 4, 1926, and the issue so raised by plaintiff's second claim is the only one for determination on this appeal. The court adjudged that the sale was consummated, within the contemplation of the statute, when the negotiations therefor progressed to the point of passing title to the merchandise from the seller to the purchaser, and which it held to be on December 28, 1925, when Barrett took possession of the stock and of all the property he purchased. The judgment, therefore, dismissed the petition, to reverse which plaintiff prosecutes this appeal.

The first three sections of the statute are not artfully drafted, and are somewhat ambiguous in the respects of (1), the precise time when the purchaser shall exact or demand of the seller the list of creditors as is prescribed in the first section; (2), the time when the purchaser shall give notice of his intended or completed purchase as is prescribed in the second section; and (3), as to when the limitations prescribed in the proviso to the third section commence to run. Neither of the first two ambiguities are presented by this record, and we will devote the opinion entirely to a consideration of the third one.

It is argued on behalf of plaintiff that, since the action prescribed by the third section of the act is one against the purchaser alone, and the second section imposes the duty on him to give the required notice, and the first section imposes upon him the duty to demand of the seller a list of the latter's creditors, the *consummation* of the sale referred to in the proviso of the third section means and was intended by the Legislature to refer to the *consummation* by the *purchaser;* and it is then contended that *his* consummation of the sale was when he performed his part of the agreement of purchase, and which in this case was January 4, when he issued and delivered his check. There is considerable support for that argument, but the same is true with reference to the contention of defendants to the effect that the consummation of the sale, as contemplated by the statute, was a joint action in which both seller and purchaser participated, and that the Legislature intended to start the four-months period of limitation from the time that the title passed to the purchaser, and which was generally, if not universally, evidenced by the open and notorious act of a change in possession, and we must

admit that the literal interpretation of the proviso containing the limitation relied on seems to sustain that contention. Not only so, but to adopt the interpretation contended for by plaintiffs might result in postponing the commencement of the limitation period indefinitely, since, under that construction, the limitation would be tolled until payment by the purchaser was made, and which is a transaction of such a nature as to serve no notice on the creditor of the seller, for whose benefit the cause of action is given.

It will be noted that the four-months' limitation commences to run from the consummation of *the sale,* and not from the time of *performance* of all of its terms. Payment by the purchaser is an act of performance on his part, and which is made by him in satisfaction of his obligation that he assumed when the sale was completed or consummated. Mr. Webster defines the word "consummate" as:

"To bring to completion; to complete; finish; perfect; achieve; . . . to come to fulfillment or perfection."

The text in 12 C. J. pp. 1309, 1910, is to the same effect, and in the cases of Morse v. Conley, 83 N. J. Law, 416, 85 A. 196, and Wolverton v. Tuttle, 51 Or. 501, 94 P. 961, it was held that a broker's commission was due and collectible, under his contract providing that it should be so upon the "consummation of the sale," when the title passed to the involved property from the seller to the purchaser, and that when that was done the commission became due, and the broker could maintain an action therefor.

After thorough consideration of the involved sections of the statute, we have concluded that it was the intention of the Legislature to provide for the starting of the limitations of four months, contained in the proviso to the third section, from the notorious act of taking possession and when the passing of title occurred, and which, we repeat, is sustained by the literal correct meaning of the terms employed and by the adjudications bearing upon the question.

The trial court having so held, its judgment is affirmed.